UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                        :
SARADIA EUGENE,                                         :
                                                        :
                                                        :
                          Plaintiff,                    :
                                                        :                   25-cv-6173 (LJL)
            -v-                                          :
                                                        :                   OPINION AND ORDER
CITY OF NEW YORK, et al.,                               :
                                                        :
                          Defendants.                   :
                                                        :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/25/2026

LEWIS J. LIMAN, United States District Judge:

Defendants the City of New York (the "City"), the New York City Mayor's Office of

Talent and Workforce Development ("Talent"), and the New York City Department of Small

Business Services ("SBS" and with the City and Talent, "Defendants") move, pursuant to

Federal Rule of Civil Procedure 12(b)(6), for an order dismissing the amended complaint ("AC")

of Plaintiff Saradia Eugene ("Plaintiff"), proceeding *pro se*, with prejudice for failure to state a

claim for relief.  Dkt. No. 40.

## BACKGROUND

The following facts are drawn from the AC and from Plaintiff's declaration before this

Court and her opposition to the motion to dismiss.  They are taken as true for purposes of this

motion.

Plaintiff identifies as an African-American woman and a resident of Brooklyn, New

York.  Dkt. No. 33 (Amended Complaint or "AC") ¶¶ I.1; III.1.  For a nearly three-year period,

from December 2020 until September 2023, she was employed as a Program Manager in the

healthcare workforce sector of the City's Workforce Development Corporation/the New York

City Mayor's Office of Workforce Development, a non-profit arm of SBS.  *Id.* ¶¶ I.1, III.1, III.4,

III.5.  Plaintiff's responsibilities focused on developing healthcare workforce pipelines during a critical nursing shortage, including designing training pathways.  *Id.* ¶ V.A.1.

Plaintiff commenced her employment with the City of New York on or about December 28, 2020.  Dkt. No. 46 ¶ 2.  On or about August 15, 2022, New York City mayor Eric Adams signed Executive Order 22 which created Talent with the responsibility to manage and oversee the City's talent and workforce development related industry partnerships and relationships.  AC ¶ V.B.4; Executive Order § 1(b).  Talent assumed control over the functional supervision, assignment authority, workplace direction and day-to-day oversight for SBS's work, while SBS continued to handle payroll.  AC ¶¶ I.3, V.B.4, B.5.  Plaintiff and other colleagues began reporting to work in person occasionally in late 2022 and on a regular basis in or about January 2023.  *Id.* ¶ V.B.5.  At that point, Plaintiff's supervision shifted to Executive Director Daniel Liss ("Liss").  *Id.* ¶¶ I.3, V.B.6.

Plaintiff performed her duties successfully for more than two years without any complaints, counseling, or negative evaluations.  *Id.* ¶¶ I.3. V.2.  After her supervision shifted to Liss, her experience changed dramatically.  *Id.* ¶¶ V.B.6.  Beginning in or around January 2023, Liss became impatient and dismissive when Plaintiff sought clarification or assistance, rolling his eyes, sighing, dismissing her questions, and speaking in a condescending tone.  *Id.* ¶ V.C.7.  At the same time, her assignments were downgraded from substantive program management work to clerical or secretarial work, including acting as notetaker, "Googling" basic information, cleaning and updating spreadsheets, organizing contact lists, and performing other menial administrative tasks.  *Id.* ¶ V.C.8.

Plaintiff alleges that her assignments, treatment, and professional opportunities began to diverge sharply from those given to similarly-situated white colleagues.  *Id.* ¶ V.B.6.  Plaintiff

2

was given tasks that white colleagues rejected or regarded as "beneath" them, with some colleagues remarking that such tasks were "more appropriate" for Plaintiff.  *Id.* ¶ V.C.10.  In meetings, Plaintiff was often talked around or over, while white colleagues were acknowledged, affirmed, and incorporated into discussions and during presentation rounds, Plaintiff was simply skipped.  *Id.* ¶ V.C.11.  When new employees arrived, white colleagues were introduced and welcomed by their title while Plaintiff was ignored or not acknowledged at all.  *Id.* ¶ V.C.12.

Plaintiff alleges that, despite working nearly three years in a managerial capacity, she was never considered, discussed, or prepared for promotion, director-level roles, or any succession planning.  *Id.* ¶ V.J.49.  She received no career pathway conversations, promotional reviews, or development plans.  *Id.* ¶ V.J.50.  In contrast, a white Program Manager who started after Plaintiff began her employment advanced to Program Director and then Director within approximately two and a half years, and another white Program Manager who joined around the same time as Plaintiff was placed directly into a Director role and mentored for higher leadership.  *Id.* ¶ V.J.51.  She alleges that the advancements were not the result of a formal application or posting process, but occurred through informal management selection, mentoring, and recommendation.  *Id.* ¶ V.J.52.  She alleges that Liss played a direct role in recommending and facilitating these promotions.  *Id.*

From approximately January 2023 through June 2023, Liss conducted one-on-one meetings with Plaintiff that were framed as "check-ins."  *Id.* ¶ V.D.14.  Plaintiff alleges that the check-ins functioned as psychological pressure to leave, with Liss asking questions such as "how long do you see yourself staying here?" and "how do you feel about these new tasks."  *Id.* ¶¶ V.D.14–15.  In or about May 2023, Liss also began sending Plaintiff email meeting "recaps" relaying performance concerns that had never been raised in real-time and that Plaintiff alleges

were fabricated. *Id.* ¶ V.E.18. The meeting recaps inserted critiques about Plaintiff's performance that Plaintiff alleges were unfounded; Plaintiff alleges that they misstated Plaintiff's statements and actions. *Id.* ¶ V.E.19. When Plaintiff attempted to correct one of these inaccurate recaps, a human resources ("HR") representative instructed her not to respond and characterized Plaintiff as "combative." *Id.* ¶ V.E.20. Shortly thereafter, Liss stopped sending the recaps. *Id.* ¶ V.E.21.

In or about May 2023, Plaintiff was abruptly presented with a Performance Improvement Plan ("PIP") and placed on a 30-day probationary period. *Id.* ¶ V.D.22. Defendants have submitted a copy of the PIP, Plaintiff does not object to its authenticity, and it is incorporated by reference. *See Preston v. New York*, 223 F. Supp. 2d 452, 461 (S.D.N.Y. 2002), *aff'd sub nom. Preston v. Quinn*, 87 F. App'x 221 (2d Cir. 2004) (summary order). The PIP is dated May 4, 2023. Dkt. No. 41-1. Liss recounts that Plaintiff has a positive attitude and praises Plaintiff's "efforts to complete things quickly or show up to meetings early, and . . . willingness to listen to what I had to share." *Id.* at 2.[1] At the same time, he also recounts that during the prior two months, including at regular check-in meetings on March 16, March 30, April 6, April 11, April 12, April 19, and April 27, he had to counsel Plaintiff on her unacceptable performance. *Id.* The letter places Plaintiff on a PIP during which over a 30-day period her work will be closely monitored and specifies seven areas in which Plaintiff must show immediate improvement. *Id.* It warns that that "[i]f any objective of this improvement plan is not met at any time during the specified time frame, disciplinary action, up to and potentially include [sic] separation from the Workforce Development Corporation, may occur." *Id.* at 3. Plaintiff alleges that the PIP was inconsistent with the City's established online evaluation system. AC ¶ V.F.23. She also alleges

---

[1] Citations to this docket entry use ECF pagination.

that prior to the PIP, she had never undergone a formal performance evaluation nor received any negative reviews or documentation in the official online evaluation system.  *Id.* ¶ V.F.30.

Plaintiff requested and received a meeting with HR representatives to discuss the PIP.  *Id.* ¶ V.D.24.  During that meeting, which took place in early May or June 2023, Plaintiff disclosed concerns about unfair treatment, stated that she did not trust her supervisor based on ongoing mistreatment, and informed HR that she had initiated an internal racial and employment discrimination complaint.  *Id.* ¶ V.D.25.

In early June 2023, immediately after a monthly meeting, HR representative Dennis told Plaintiff that the PIP would be extended because her internal EEO complaint needed to be resolved first or "run simultaneously" with the PIP.  *Id.* ¶ V.H.38.  Plaintiff's PIP was extended from 30 days to 60 days and then to 90 days.  *Id.* ¶ V.H.40.  Plaintiff alleges that Liss was instructed to "refrain from" engaging with Plaintiff during the PIP period.  *Id.* ¶ V.H.41.

Thereafter, on or about July 7, 2023, Plaintiff met with HR Director Angelita McDonald ("McDonald").  *Id.* ¶ V.F.32.  During that meeting, Plaintiff informed McDonald that HR representatives had indicated that the PIP outcome was tied to the resolution of Plaintiff's internal discrimination complaint and that removal from the PIP was contingent on the outcome of the internal investigation.  *Id.* ¶ V.G.33.  Ultimately, Plaintiff was not removed from the PIP even after the internal investigation concluded, but instead was terminated.  *Id.* ¶ V.G.35.

Plaintiff alleges that during this process, Liss and colleagues engaged in microaggressions and dismissive conduct.  *Id.* ¶ V.I.44.  She alleges that they spoke down to her and undermined her authority in front of interns she supervised, who then in turn mirrored the same dismissive and non-accountable behavior, including missing meetings and failing to complete assigned tasks.  *Id.*

Plaintiff's employment was terminated on September 19, 2023. *Id.* ¶ V.K.58. That day, after briefly leaving her workstation, she returned to find the office largely vacated and was abruptly locked out of her computer system and accounts. *Id.* ¶ V.K.55. Later that evening, she received an email at her personal email address informing her that her employment was terminated. *Id.* ¶ V.K.58.

In the fall of 2024, while struggling to regain employment, Plaintiff requested and received a copy of her personnel file from Defendants. *Id.* .¶ V.L.60. She then learned for the first time that Defendnats had created and preserved a termination letter claiming that she had been discharged for poor performance with an attachment referencing the handwritten PIP with her coerced signature. *Id.* ¶ V.L.61. She alleges that the poor performance narrative misrepresents her work history, constitutes defamatory content impugning professional competence, and serves as continuing adverse action that materially contributed to her difficulty securing new employment. *Id.* ¶ V.L.64–65.

## PROCEDURAL HISTORY

Plaintiff initiated this case by complaint filed on July 26, 2025, alleging claims for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Dkt. No. 1. The case was reassigned to the undersigned on August 19, 2025. Aug. 19, 2025 Minute Entry. Defendants filed a motion to dismiss on November 28, 2025. Dkt. No. 24.

On January 7, 2026, Plaintiff filed an amended complaint ("AC"). Dkt. No. 33.[2] The AC alleges claims for race discrimination, retaliation, hostile work environment, and retaliatory termination under Title VII and 42 U.S.C. § 1981, and New York State and New York City

---

[2] The motion to dismiss was rendered moot by virtue of the filing of the amended complaint. Accordingly, the motion at Dkt. No. 24 is denied as moot. Individual Practices in Civil Cases, Rule 3.C.

6

claims for defamation per se, libel, tortious interference with prospective employment and violations of the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). *Id.*

On January 29, 2026, Defendants filed this motion to dismiss accompanied by a memorandum of law and the declaration of Brandon Weisman in support of the motion. Dkt. Nos. 40-42. With the declaration, Defendants filed as exhibits Plaintiff's PIP, her Equal Employment Opportunity Commission ("EEOC") complaint, and her EEOC charge. Dkt. No. 41. Defendants also filed a notice pursuant to Local Rule 12.1 that the motion to dismiss referred to matters outside the pleadings. Dkt. No. 43. Plaintiff filed a memorandum of law in opposition to the motion to dismiss on February 10, 2026. Dkt. Nos. 44–45. Plaintiff also filed her own declaration in opposition to the motion. Dkt. No. 46. Defendants filed a reply memorandum in further support of the motion on February 26, 2026. Dkt. No. 50.

## STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff. *See York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002), *cert. denied*, 537 U.S. 1089 (2002). This requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556.

The Court construes *pro se* pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000). This obligation "is especially true when dealing with pro se complaints alleging civil rights violations." *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002). However, while the Court construes *pro se* pleadings liberally, this does not relieve *pro se* plaintiffs of the requirement that they plead enough facts to "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (per curiam). Nor does it relieve them of the obligation to otherwise comply with the pleading standards set forth by the Federal Rules of Civil Procedure. *See Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007). "Thus, the Court's 'duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to rewrite it.'" *Davila v. Lang*, 343 F. Supp. 3d 254, 266 (S.D.N.Y. 2018) (quoting *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009)).

District courts may consider new factual allegations made in a *pro se* plaintiff's opposition papers where they are consistent with the complaint's allegations, but will not consider entirely new claims nor allow a plaintiff to use opposition filings to rewrite the complaint. *See Generation Next Fashions Ltd. v. JP Morgan Chase Bank, N.A.*, 698 F. Supp. 3d

663, 677 (S.D.N.Y. 2023) (citing *Braxton v. Nichols*, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010)); *Pandozy v. Segan*, 518 F. Supp. 2d 550, 554 n.1 (S.D.N.Y. 2007), *aff'd*, 340 Fed. Appx. 723 (2d Cir. 2009); *Weerahandi v. Am. Statistical Ass'n*, 2015 WL 5821634, at *8 (S.D.N.Y. Sept. 30, 2015)).

Affirmative defenses "usually cannot be considered on a motion to dismiss." *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 400 (S.D.N.Y. 2023). This rule of thumb "is not absolute," however. *Id.* at 401. Instead, "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (affirming district court's decision that plaintiff's complaint pleaded the facts necessary to sustain defendant's official immunity affirmative defense). The Court may similarly grant a motion to dismiss based on an affirmative defense that is apparent on the face of documents incorporated by reference within the complaint or documents that are integral to the complaint. *See Teva Pharms. USA, Inc. v. Sandoz Inc.*, 2013 WL 3732867, at *3 (S.D.N.Y. July 16, 2013) (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)) (documents incorporated by reference); *City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*, 587 F. Supp. 3d 56, 83 (S.D.N.Y. 2022) (integral documents).

## DISCUSSION

Defendants argue that the AC should be dismissed in its entirety. They claim: (1) Talent and SBS should be dismissed because they are non-suable entities, Dkt. No. 42 at 4–5; (2) Plaintiff's Title VII claims as to any adverse action prior to March 3, 2023 are time-barred, *id.* at 5; (3) Plaintiff has not stated a claim for discrimination on the basis of race under either Title VII or section 1981 because she does not plead discriminatory animus with respect to the PIP or her

9

termination, *id.* at 8–12; (4) the AC fails to state a federal claim for hostile work environment, *id.* at 12–14; (5) the AC fails to state a claim under the NYSHRL or the NYCHRL, *id.* at 14–16; (6) the AC fails to state a claim for retaliation under either Title VII or Section 1983, *id.* at 16–19; and (7) Plaintiff's tort claims are procedurally barred and fail to state a claim for relief, *id.* at 20–21.

## I.    Talent and SBS Are Non-Suable Entities

"[I]t is well established that lawsuits challenging the conduct of City agencies must be brought against the City itself." *Carrington v. N.Y.C. Hum. Res. Admin.*, 2020 WL 2410503, at *3 (S.D.N.Y. May 12, 2020) (citing N.Y. City Charter ch. 17 § 396 (2020) ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of an agency, except where otherwise provided by law.")).  SBS and Talent are City agencies.  Accordingly, they are improper parties and Defendants' motion to dismiss them is granted.

## II.    Conduct Predating March 3, 2023

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003).  "The administrative exhaustion requirement applies to pro se and counseled plaintiffs alike." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015) (citing *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599–600 (2d Cir. 1999) (per curiam)). "[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Fowlkes*, 790 F.3d at 393–98.  Because exhaustion is an affirmative defense, the defendant bears the burden of establishing the plaintiff's failure to timely exhaust administrative remedies.  *See*

10

*Broich v. Inc. Vill. of Southampton*, 650 F. Supp. 2d 234, 246 (E.D.N.Y. 2009); *cf. Domitz v. City of Long Beach*, 737 F. App'x 589, 590 (2d Cir. 2018) (summary order) (affirming dismissal of discrimination claim where "the complaint contained information that suggested the EEOC charge was not timely filed").

Plaintiffs asserting Title VII claims must file a complaint with the EEOC or an equivalent state agency within 300 days of the allegedly discriminatory action. *See* 42 U.S.C. § 2000e-5(e)(1); *Gindi v. N.Y.C. Dep't of Educ.*, 786 F. App'x 280, 282 (2d Cir. 2019) (summary order); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015) ("Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within 180 or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days after the alleged unlawful employment practice occurred." (internal quotation marks omitted)). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.*; *see Richards v. Dep't of Educ. of City of N.Y.*, 2022 WL 329226, at *6 (S.D.N.Y. Feb. 2, 2022). "Timeliness is measured from the date that the employee receives notice of the discriminatory decision." *Walker v. Linklaters LLP*, 948 F. Supp. 2d 396, 399 (S.D.N.Y. 2013). A litigant's *pro se* status does not alone warrant equitable tolling. *See Rudaj v. Treanor*, 522 F. App'x 76, 77 (2d Cir. 2013) (summary order); *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005); *Wheeler v. Artuz*, 6 F. App'x 57, 58 (2d Cir. 2001) (summary order); *Smith v. McGinnis*, 208 F.3d 13, 18 (2d Cir. 2000).

Plaintiff affirmatively pleads that she filed a charge of discrimination and retaliation with the EEOC. AC ¶ IV.1. That complaint was filed on December 28, 2023. Dkt. No. 41-3. Thus,

11

any alleged adverse actions that occurred 300 days prior, or before March 3, 2023, are time-barred for purposes of Plaintiff's Title VII claims. *See Bernstein v. N.Y.C. Dep't of Educ.*, 2021 WL 4429318, at *5 (S.D.N.Y. Sept. 27, 2021), *aff'd*, 2022 WL 1739609 (2d Cir. May 31, 2022). Those acts may still "provide relevant background evidence" to any timely claims. *Vega*, 801 F.3d at 88 (quoting *Morgan*, 536 U.S. at 112); *see also Davis-Garrett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("[E]ven with respect to a claim of discrete discriminatory or retaliatory acts, expiration of limitations period does not bar 'an employee from using the prior acts as background evidence in support of a timely claim.'" (quoting *Morgan*, 536 U.S. at 105)); *Harewood v. N.Y.C. Dep't of Ed.*, 2019 WL 3042486, at *4 (S.D.N.Y. May 8, 2019) ("[D]iscrete acts of discrimination that occurred outside the 300-day period [still] . . . provide relevant background evidence to any timely claims."). Moreover, such incidents can be considered in connection with Plaintiff's hostile work environment claim to the extent that they are "sufficiently related" to conduct occurring within the 300-day time period. *See Ball v. Marriott Int'l, Inc.*, 627 F. Supp. 3d 296, 314 (S.D.N.Y. 2022).

### III.    Plaintiff's Claims of Discrimination on the Basis of Race

Plaintiff alleges claims for discrimination under Title VII and Section 1981.

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When only indirect evidence of intent to discriminate is available, discrimination claims under Title VII are subject to the three-step burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *see Bart v. Golub Corp.*, 96 F.4th 566, 569 (2d Cir. 2024) ("To succeed on a Title VII disparate treatment claim, a plaintiff must prove discrimination either by direct evidence of intent to

12

discriminate or, more commonly, by indirectly showing circumstances giving rise to an inference of discrimination." (internal quotations omitted)); *DeMuth v. U.S. Small Bus. Admin.*, 819 F. App'x 23, 25 (2d Cir. 2020) (summary order); *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015). Under that framework, a plaintiff must first establish "a *prima facie* case of discrimination." *DeMuth*, 819 F. App'x at 25. To do so, she must show that "(1) she belonged to a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, 2023 WL 4763257, at *5 (S.D.N.Y. July 26, 2023) (citing *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); and *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). "To make out a Title VII discrimination claim, [plaintiff] must show some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55 (2024). She need not show that she suffered a materially adverse change in the terms and conditions of her employment or that the harm suffered was "significant." *See id.* at 355; *Back v. Hapoalim*, 2024 WL 4746263, at *2 (2d Cir. Nov. 12, 2024) (summary order).

Importantly, "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss." *Vega*, 801 F.3d at 84. "[A]t the initial stage of a litigation, the plaintiff's burden is 'minimal'—he need only plausibly allege facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Id.* at 86–87 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in [discriminatory] terms; or its invidious comments about others in the employee's

13

protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). Nevertheless, "a discrimination complaint . . . must [still] at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.,* 768 F.3d 247, 254 (2d Cir. 2014) (alterations and internal quotation marks omitted). Additionally, "the elements of a *prima facie* case may be used as a prism to shed light upon the plausibility of the claim." *Littlejohn,* 795 F.3d at 311 n. 9 (internal quotation marks omitted); *accord Vega,* 801 F.3d at 84 n.7 (same).

"To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993); *see also* Dkt. No. 63 at 45 ("The activities enumerated in Section 1981 are those 'to make and enforce contracts, to sue, be parties, [and to] give evidence.'"). It is well-settled that "claims brought pursuant to Section 1981 are analyzed under the same standards as Title VII claims." *Ganthier v. N. Shore-Long Island Jewish Health Sys.*, 45 F. Supp. 2d 271, 282 (E.D.N.Y. 2004) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000)). As in the Title VII context, to prevail on her § 1981 claim, Plaintiff must "initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

14

Defendants argue that Plaintiff has not alleged facts giving rise to an inference of discriminatory animus motivating the alleged adverse actions.  Dkt. No. 42 at 10–12.  Plaintiff has properly alleged that she is a member of a protected class and that she is qualified for the position she was terminated from, having worked in the position for at least two years prior to her termination.  AC ¶¶ III.1.  Defendants do not dispute that Plaintiff's PIP and termination constitute adverse actions that affected negatively the terms and conditions of her employment.  Dkt. No. 42 at 10.  At this stage, the Court further assumes that her assignment to less substantive work and exclusion from meetings additionally constitute adverse actions under *Muldrow*.[3]  *See Muldrow*, 601 U.S. at 359 (adverse action alleged through, inter alia, transfer accompanied by more administrative tasks and less prestige); *Ashmeade v. Amazon.com*, 2026 WL 880645, at *9 (S.D.N.Y. Mar. 31, 2026) (allegations of assignment to a higher workload with a greater proportion of menial tasks sufficient to allege harm).  Accordingly, the question is whether Plaintiff has properly pleaded sufficient facts to raise a plausible inference of intentional discrimination and whether she has properly pleaded that discrimination was a "but-for" cause of these actions.  *See McConkey v. Churchill Sch. & Ctr.*, 2025 WL 2062195, at *8 (S.D.N.Y. July 23, 2025).

---

[3] The AC could be construed to raise a claim based on Plaintiff's lack of promotion.  *See* AC ¶¶ V.J.49–53.  To allege discrimination based on failure to promote, a plaintiff must allege that she "either applied for the relevant position or would have done so absent the allegedly discriminatory conduct." *Local 3621, EMS Officers Union v. City of New York*, 2025 WL 2781280, at *20 (S.D.N.Y. Sept. 30, 2025); *see also Barrett v. Forest Lab'ys, Inc.*, 39 F. Supp. 3d 407, 442 (S.D.N.Y. 2014) (dismissing failure-to-promote claim where plaintiffs did not "allege[] that they were interested in a promotion or that there was an open position to which they could have (or would have) applied."); *Pollock v. Shea*, 568 F. Supp. 3d 500, 508 (S.D.N.Y. 2021) (denying motion to dismiss failure-to-promote claim where plaintiff alleged that she was not considered for a job which had no publicized requirements and no objective selection criteria, despite expressing interest in the role).  Plaintiff has made no such allegations.

Plaintiff relies solely on allegations that employees who were not in her protected class were treated more favorably—generally referred to as comparator evidence—to allege that her unfair treatment was driven by discriminatory animus.  Neither the AC nor her declaration filed in opposition to Defendants' motion recite any comments by Defendants suggesting racial bias.  Instead, she alleges that, unlike her white colleagues, she was not promoted or mentored for future promotions, AC ¶¶ V.J.49–53, she was given assignments that white colleagues regarded as "beneath" them but "more appropriate" for Plaintiff, *id.* ¶ V.C.10, she was skipped during presentation rounds and talked around or over while white colleagues were incorporated into discussions, *id.* ¶ V.C.11, and she was ignored or not acknowledged when new employees arrived, while white colleagues were introduced and welcomed by title, *id.* ¶ V.C.12.  She further alleges that she was placed on a PIP based on fabricated allegations of poor performance and terminated following that PIP with no opportunity to address purported deficiencies because her supervisor was specifically instructed to refrain from interacting with her.  *Id.* ¶ V.H.41.

To plead facts supporting a minimal inference of discrimination through disparate treatment, a plaintiff must allege "the more favorable treatment of employees not in the protected group" who are "similarly situated in all material respects." *Carris v. First Student, Inc.*, 682 F. App'x 30, 32 (2d Cir. 2017) (summary order) (first quoting *Littlejohn*, 795 F.3d at 312; then quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)).  "Significantly, at the pleading stage, a pro se plaintiff must only make a 'minimal showing of comparability.'" *Palmer v. Shchegol*, 406 F. Supp. 3d 224, 232 (E.D.N.Y. 2016) (quoting *Horsham v. Fresh Direct*, 136 F. Supp. 3d 253, 266 (E.D.N.Y. 2015)).  Even so, she "must at least plead allegations from which it is plausible to conclude that the comparators are similarly situated." *Opuku v. Brega*, 2016 WL 5720807, at *9 (S.D.N.Y. Sept. 30, 2016).

As to Plaintiff's allegations that she was given assignments that her white colleagues regarded as beneath them, that she was talked over or skipped during presentations, and that she was not introduced to new employees, Plaintiff compares her treatment to the treatment of her "white colleagues." AC ¶¶ 10–11. She does not allege that these colleagues held the same title as her, worked on the same team as her, or were otherwise similarly situated in any respect, much less all material respects. *Cf. Stiler v. Amalgamated Life Ins. Co.*, 2026 WL 867166, at *16 (S.D.N.Y. Mar. 30, 2026) (to support a claim based on disparate treatment, "allegations that she and the 'comparators worked in the same group and were accountable to the same supervisors, but were subjected to disparate treatment,' for instance, 'may be sufficient to raise an inference of discrimination.'" (quoting *Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 495 (E.D.N.Y. 2016)). She merely alleges that these comparators were outside of her protected class and employed by the same employer; such allegations are insufficient to raise an inference of discriminatory motive. *See Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 99 (S.D.N.Y. 2023) ("Identification of a 'generic class of [similarly situated] white . . . employees that allegedly received better treatment is insufficient even at the pleadings stage" (internal quotation marks and citation omitted)); *Yan v. Ziba Mode Inc.*, 2016 WL 1276456, at *5 (S.D.N.Y. Mar. 29, 2016) (plaintiff failed to raise an inference of discrimination where he "fail[ed] to plead any facts regarding how the[] employees' identities, experience levels, and conduct compared to [p]laintiff's"); *see also Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) (general allegation that "Caucasian employee[s] are not subject to any of the aforementioned conduct" insufficient to "nudge her claims [of differential treatment] across the line from conceivable to plausible" (cleaned up)). Plaintiff has not pleaded whether these white colleagues had equivalent or less experience than Plaintiff had, held positions of

equivalent or lesser rank within the department, or, whether they were similarly situated to Plaintiff and for no other reason than the difference in their race, treated more favorably. Absent additional pleadings, Plaintiff has not sufficiently alleged disparate treatment.

As to her allegations of disparate treatment in regard to promotions and leadership mentoring, Plaintiff specifies two proposed comparators: white "program managers" who joined at the same time or after Plaintiff and advanced to leadership roles.[4]  AC ¶ V.J.51.  She alleges that the comparators shared her job title, Program Manager, that they were hired close in time or after her, and that her direct supervisor, Liss, "played a direct role in recommending and facilitating these promotions." *Id.* ¶¶ V.J.51–52.  She provides no information, however, as to their respective levels of experience, whether they were accountable to the same supervisors, or the specifics of the "Program Manager" role.  Plaintiff has not alleged that these comparators were also supervised by Liss; the allegation that he had "a role" in their promotion is insufficient to demonstrate that these comparators were similarly situated to Plaintiff.  *See Brown*, 756 F.3d at 229–30; *see also id.* (absent allegations regarding "job function, experience, qualifications, or rate of pay" a plaintiff may demonstrate that comparators are similarly situated if they are "subject to the same standards governing performance evaluation and discipline" which can be shown through allegations that comparators worked on the same team and reported to the same supervisor); *Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 495 (E.D.N.Y. 2016) (plaintiff

---

[4] The AC also alleges that "Plaintiff's own direct supervisor advanced from Director to Executive Director and then to Senior Advisor within a compressed time frame." AC ¶ V.J.51. Plaintiff's direct supervisor is not, by virtue of his or her position, a similarly situated comparator, especially in regard to leadership progression. *O'Hazo v. Bristol-Burlington Health Dist.*, 599 F. Supp. 2d 242, 259 (D. Conn. 2009) (immediate supervisor "cannot be considered similarly situated" to plaintiff); *Opoku*, 2016 WL 5720807, at *10 (S.D.N.Y. Sept. 30, 2016) ("Plaintiff is not similarly situated . . . because they were Plaintiff's supervisors and had different responsibilities." (internal quotation marks and citation omitted)).

18

presented similarly situated comparators where he alleged that comparators were engineers, like plaintiff, and were accountable to the same supervisors.).

Even if these white program managers were similarly situated as to role and experience, Plaintiff has failed to allege that they were similarly situated as to conduct. Generally, comparator evidence supports an inference of discrimination where a similarly situated colleague engages in similar activity but receives more favorable treatment. *See, e.g., Carris*, 682 F. App'x at 32 (finding claim of discrimination where plaintiff alleged that white bus drivers committed the same misconduct but were placed on administrative leave, whereas she was fired); *Chinnery v. N.Y.S. Off. of Children & Fam. Servs.*, 2012 WL 5431004, at *6 (S.D.N.Y. Nov. 5, 2012) (allegations raised inference of discrimination where comparators violated the same workplace policy but received more favorable treatment); *see also McGuinness v. Lincoln Hall*, 263 F.3d 49, 55 (2d Cir. 2001) (plaintiff established prima facie case of discrimination where she and a male comparator held positions of roughly equivalent rank and were fired at the same time with the same decisionmakers with respect to severance, but were provided disparate severance packages). Here, Plaintiff alleges that she was placed on a PIP, given downgraded assignments, and given poor performance reviews that were baseless. Allegations that similarly situated employees were promoted does not provide support for the inference that disciplinary action as to Plaintiff was discriminatory, especially absent allegations that Plaintiff sought similar opportunities. *See, e.g., Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 455 (S.D.N.Y. 2023) (where plaintiff provided no comparators as to specific form of adverse action, not assigning summer session and per session work opportunities, she did not state a claim of discrimination); *Pollock*, 568 F. Supp. 3d at 508 (to allege discrimination based on failure to promote, plaintiff must allege that she sought promotion).

Plaintiff has provided insufficient allegations regarding her proposed comparators to support an inference of discrimination. However, "a liberal reading of the complaint gives an[] indication that a valid claim might be stated" if "reframe[d]." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Plaintiff's claims for discrimination are therefore dismissed without prejudice.

## IV.    Plaintiff's Claim of Hostile Work Environment

Hostile work environment claims under Title VII arise when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) (quoting *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)) (internal quotations omitted); *see Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (plaintiff must show that the "workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his or her] employment were thereby altered."). A plaintiff must allege that the conduct "(1) was objectively severe or pervasive in that it created an environment that a reasonable person would find hostile or abusive; (2) created an environment that the plaintiff subjectively perceived as hostile or abusive; and (3) occurred because of the plaintiff's protected characteristic." *Sherman v. Fivesky, LLC*, 2020 WL 2136227, at *5 (S.D.N.Y. May 5, 2020). In other words, the "test has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Alfano*, 294 F.3d at 374 (internal quotation marks and citations omitted). In determining objective hostility, courts should examine all of the circumstances "[including] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

20

with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Of course, "[i]t is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

The Second Circuit has "cautioned against setting the bar too high" in the context of a motion to dismiss a claim of hostile workplace, and a plaintiff is therefore not required to recount an exhaustive list of specific acts that contributed to a hostile workplace. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Terry*, 336 F.3d at 148). "At the motion to dismiss stage, . . . 'a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Cowan v. City of Mount Vernon*, 2017 WL 1169667, at *4 (S.D.N.Y. Mar. 28, 2017) (quoting *Patane*, 508 F.3d at 113). At the same time, however, the Supreme Court has instructed that Title VII does not enact "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discriminat[ion]* . . . because of . . . [race].'" *Id.* (emphasis in original). "A hostile work environment is 'not one that is bad for all living things in a manner that happens to involve [characteristics of the protected class]; rather it is one that is *discriminatorily* hostile to an employee based on *his or her* [membership in the protected class].'" *Bernstein v. N.Y.C. Dep't of Educ.*, 2020 WL 6564809, at *7 (S.D.N.Y. Nov. 9, 2020) (quoting *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 514 (S.D.N.Y. 2010) (Lynch, J., sitting by designation)); *accord McSweeney v. Cohen*, 776 F. Supp. 3d 200, 261–62 (S.D.N.Y. 2025).

21

Plaintiff's allegations that can be construed as supporting her claim of hostile work environment include that Liss became impatient and dismissive with her, including rolling his eyes and speaking in a condescending tone, AC ¶ V.C.7, that her white colleagues regarded her assignments as "beneath them" but appropriate for Plaintiff, *id.* ¶ V.C.10, that she was talked over, skipped in presentation rounds, and ignored when introducing new colleagues, *id.* ¶¶ V.C.11–12, that Liss conducted regular "check-in" meetings and sent email recaps fabricating performance concerns, *id.* ¶¶ V.D.14, V.E.18, that HR described her as "combative" when she tried to correct an inaccurate recap, *id.* ¶ V.E.20, that she was placed on a pretextual PIP, *id.* ¶¶ V.F.22–31, that colleagues undermined her authority in front of interns through their dismissive conduct, *id.* ¶ V.I.44, and that an intern asked her about Plaintiff's internal HR complaint during a meeting for career guidance, *id.* ¶ V.I.46.

These allegations do not plead a plausible claim of a hostile work environment so severe or pervasive as to have altered the conditions of Plaintiff's employment, or that any hostility occurred on account of Plaintiff's race. Although "improper, unfair, or false discipline can contribute to a hostile work environment so long as the disciplinary action was connected to Plaintiff's protected characteristics," *Kirkland-Hudson*, 665 F. Supp. 3d at 466, Plaintiff has not alleged that Liss's check in meetings or her placement onto a PIP reached beyond a level of simply overzealous management or had any connection to her race. *See Costello v. N.Y.S. Nurses Ass'n*, 783 F. Supp. 2d 656, 680 (S.D.N.Y. 2011) (allegation that plaintiff was "inundated with emails and micromanaged by her supervisors" and that her supervisors' management style was "overzealous, overbearing, or even oppressive" "is simply not enough to render an environment hostile under Title VII."). As noted above, she has provided insufficient facts in regard to her colleagues' positions and experience respective to her to raise an inference of

discrimination based on the disciplinary action or downgraded assignments.  Nor can her supervisor's or colleagues' dismissiveness or condescension support a claim.  *See Littlejohn*, 795 F.3d at 321 (allegations insufficient to support claim where, *inter alia*, plaintiff alleged that supervisor "made negative statements" about plaintiff, "was impatient and used harsh tones," "declined to meet with" plaintiff, and "wrongfully reprimanded" plaintiff.); *Davis-Molina v. Port Auth. of N.Y. & N.J.*, 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011), *aff'd*, 488 F. App'x 530 (2d Cir. 2012) (summary order) (at summary judgment, evidence that, *inter alia*, supervisors excluded her from meetings, avoided her in the office, "yell[ed] and talk[ed] down to her like she was an idiot," and "belittled her" was insufficient to support a claim); *cf. Leviant v. City of New York Human Resources Admin.*, 625 F. Supp. 2d 85, 98 (S.D.N.Y. 2008) (frequent disparaging remarks regarding plaintiff's national origin and native language, in addition to excessive monitoring, sufficient for hostile work environment claim).  Where "[t]he gravamen of [a plaintiff's] claim[] is rooted in conduct that amounts to nothing more than workplace dynamics—that is, personal enmity or personality conflicts," she has not stated a claim for hostile work environment.  *Davis-Molina*, 2011 WL 4000997, at *11.  That Plaintiffs' white colleagues made facially-neutral condescending comments cannot, on its own, provide the necessary "linkage" to the "claimed ground of discrimination."  *Dingle v. City of New York*, 2026 WL 370081, at *4 (E.D.N.Y. Feb. 10, 2026) (quoting *Alfano*, 294 F.3d at 377); *see id.* (dismissing hostile work environment claim where plaintiff "does not explicitly connect" coworker's facially-neutral statements "to [plaintiff's] race," even where same coworker made one statement "overtly connected to race" (emphasis omitted)).

Moreover, Plaintiff "fails to allege facts that show these incidents were more than 'episodic' events that occurred during Plaintiff's career."  *Bell v. SL Green Realty Corp.*, 2021

23

WL 516575, at *7 (S.D.N.Y. Feb. 11, 2021) (dismissing hostile work environment claim where plaintiff did not provide "details on the duration and frequency" of her supervisor's discriminatory conduct).  Incidents of hostile conduct must be "sufficiently continuous and concerted in order to be deemed pervasive." *Alfano*, 294 F.3d at 274 (internal quotation marks and citation omitted).  Plaintiff has not alleged facts as to how often such condescending comments were made; to state a claim of hostile work environment, it is relevant whether such comments were made every time Plaintiff's work was discussed or on merely a handful of occasions.  *Compare Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) ("routine" antisemitic remarks and supervisor calling out plaintiff on account of his religion "almost daily" in a manner that displayed animosity sufficient to establish hostile work environment) *with Beale v. Mount Vernon Police Dep't*, 895 F. Supp. 2d 576, 590 (S.D.N.Y. 2012) (at summary judgment, half dozen comments over a sixteen-month period, including comments that "women are useless" and "women should not be on this job" insufficient to create a triable issue as to hostile work environment claim).

Plaintiff's allegations are insufficient to plausibly allege sufficient pervasiveness or that Defendant's hostility was tied to her race.  Defendants' motion to dismiss Plaintiff's claim of hostile work environment is thus granted.  However, "leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks and citation omitted).  As the Second Circuit has stated "[a] pro se complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be started." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal quotation marks, citations, and alterations

omitted); *accord Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 439 (S.D.N.Y. 2023). Plaintiff's claim of hostile work environment is thus dismissed without prejudice.

## V.    Discrimination under NYSHRL and NYCHRL

As with Plaintiff's Title VII claims, "discrimination claims under . . . the NYSHRL[] and the NYCHRL are governed by the familiar three-part *McDonnell Douglas* burden-shifting framework." *Hanley v. N.Y.C. Health & Hosp. Corp.*, 722 F. Supp. 3d 112, 120 (E.D.N.Y. 2024) (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010)); *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75–76 (2d Cir. 2015) (applying burden-shifting framework to NYCHRL claim).  Within this same burden-shifting framework, to state a claim for race discrimination under the NYCHRL, "the plaintiff need only demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of [his race].'" *Mihalik v. Credit Agricole Cheuvreaux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).  Following 2019 amendments to the NYSHRL, that more liberal standard applies to claims for race discrimination under the NYSHRL as well.  *See Moukdad v. NYU Langone Health Sys.*, 2026 WL 774270, at *6 (S.D.N.Y. Mar. 18, 2026) (applying same standard to both NYSHRL and NYCHRL claims); *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122–23 (2d Cir. 2024) (in retaliation context, noting that following 2019 amendment, NYSHRL adopts "NYCHRL's more liberal pleading standard").  Under this standard, "a plaintiff must show that discrimination played a role in the employer's decision-making." *Brown v. Montefiore Med. Ctr.*, 2021 WL 1163797, at *8 (S.D.N.Y. Mar. 25, 2021) (citing *Ya-Chen Chen*, 805 F.3d at 75–76).

Under the NYCHRL, there "are not separate standards" for hostile work environment and discrimination claims. *Johnson v. Strive E. Harlem Emp. Grp.*, 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014).  Instead, "the former is subsumed into the latter[.]" *Rothbein v. City of New*

25

*York*, 2019 WL 977878, at *9 n.12 (S.D.N.Y. Feb. 28, 2019).  Courts therefore apply the same lenient pleading standard to NYCHRL hostile work environment claims as they apply to discrimination claims brought pursuant to the NYCHRL: a plaintiff must allege she was treated "less well" due to her "membership in a protected class."  *Bautista v. PR Gramercy Square Condominium*, 642 F. Supp. 3d 411, 427 (S.D.N.Y. 2022) (internal quotations and citations omitted).  Similarly, pursuant to the 2019 amendments to the NYSHRL, stating a hostile work environment claim under NYSHRL now requires only that the plaintiff plead sufficient facts showing he was "subjected to inferior terms, conditions, or privileges of employment" due to his membership in a protected class.  *Samuels v. City of New York*, 2023 WL 5717892, at *9 (S.D.N.Y. Sept. 5, 2023).

Though the NYSHRL and NYCHRL have more liberal standards, they equally require a plaintiff relying on comparator evidence to allege that she was treated less favorably as compared to similarly situated comparators.  *See Mumin v. City of New York*, 760 F. Supp. 3d 28, 53 (S.D.N.Y. 2024) (dismissing NYSRHL and NYCHRL claims because plaintiff failed to identify similarly situated employees); *Benzinger v. Lukoil Pan Am., LLC*, 447 F. Supp. 3d 99, 122–23 (S.D.N.Y. 2020) (dismissing NYSHRL and NYCHRL claims for failure to adequately plead that proposed comparators are similarly situated and providing no other evidence of discriminatory animus).  Plaintiff's claims under the NYSHRL and NYCHRL are thus dismissed, without prejudice, for the reasons articulated above: the AC does not adequately allege that Plaintiff's proposed comparators are similarly situated.

## VI.    Plaintiff's Claim of Retaliation

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Section 1981 prohibits retaliation under the following provision: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a); *see CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 446 (2008) (holding that Section 1981 applies to retaliation claims). The standard is the same for retaliation claims brought under Title VII and Section 1981. *See Littlejohn*, 795 F.3d at 315.

To survive a motion to dismiss, the plaintiff must plausibly allege that defendants discriminated—or took an adverse employment action—against her because she has opposed an unlawful employment practice. *Vega*, 801 F.3d at 90. Stated otherwise, a plaintiff must allege: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 315–16.

To properly allege the first element, plaintiff "need not prove that the conditions against which he protested actually amounted to a violation of Title VII." *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 134 (2d Cir.), *cert denied*, 528 U.S. 964 (1999). It is sufficient that she had a good faith reasonable belief that the underlying challenged actions of the employer violated the law. *Id.* Protected activity includes "informal protests of discriminatory employment practices, including making complaints to management," *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990), but generalized complaints about a supervisor's treatment unrelated to prohibited discrimination are not sufficient, *Mejia v. White Plains Self Storage Corp.*, 2020 WL 247995, at *6 (S.D.N.Y. Jan. 16, 2020) (collecting cases). Similarly, although complaints need not mention discrimination or use particular language, ambiguous

27

complaints must make the employer aware of the alleged discriminatory misconduct to put the employer on notice. *See, e.g., Mejia*, 2020 WL 247995, at \*6; *Int'l Healthcare Exch. Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007).

As to the third element, in the context of a retaliation claim, an adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see Vega*, 801 F.3d at 90. "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII," *Vega*, 801 F.3d at 90, in that it is "not limited to discrimination actions that affect the terms and conditions of employment," *id.* (quoting *Burlington N.*, 548 U.S. at 64). *See also Patane*, 508 F.3d at 116. It covers a narrow range of conduct in the sense that the alleged retaliatory action must be "'materially adverse,' meaning that it causes 'significant' harm." *Muldrow*, 601 U.S. at 357 (quoting *Burlington N.*, 548 U.S. at 68).

Finally, Plaintiff must plead "but-for" causation such "that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360–61 (2013). This element can be "shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Vega*, 801 F.3d at 90.

The standard for retaliation under the NYSHRL and NYCHRL is the same as under Title VII, except that NYSHRL and NYCHRL do not require an "adverse employment action" in order to state a claim for retaliation. *See Moore v. Hadestown Broadway Ltd. Liab. Co.*, 722 F. Supp. 3d 229, 247 (S.D.N.Y. 2024). Rather, under the NYSHRL and NYCHRL, the plaintiff need only plead that "something happened that was reasonably likely to deter a person from

28

engaging in protected activity." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 67 (S.D.N.Y. 2020). "[O]therwise, the burden on the other three prongs of a prima facie retaliation claim under the federal antidiscrimination law is identical to the NYSHRL and NYCHRL standards." *McSweeney v. Cohen,* 2025 WL 966022 at *26 n.16 (S.D.N.Y. Mar. 31, 2025) (citing *Moore*, 722 F. Supp. at 247).

Plaintiff alleges that she filed an internal racial discrimination complaint, AC ¶ V.F.25, and reported to the internal EEO office that she was retaliated against for filing the internal racial discrimination complaint, *id.* ¶ V.G.32; both of these complaints constitute protected activity. *See Bamba v. U.S. Dep't of Homeland Sec.*, 2024 WL 3924810, at *14 (S.D.N.Y. Aug. 23, 2024) (filing complaints that "oppose[] either discrimination . . . or retaliation for complaining of such discrimination" constitutes protected activity). Plaintiff has also alleged that she informed Defendants of these complaints by reporting them to HR and the internal EEO office. *Id.* ¶¶ V.F.25, V.G.32–33; *see Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) (knowledge for retaliation requires only "general corporate knowledge that the plaintiff has engaged in a protected activity"); *Kwan*, 737 F.3d at 844 (knowledge of protected activity by an officer is "sufficient to impute to [the corporation] general corporate knowledge of the plaintiff's protected activity"). As to adverse action, Defendants do not dispute that her ultimate termination constitutes an adverse action, *see also Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001), as amended (June 6, 2001) (termination constitutes adverse action), but dispute that Plaintiff has alleged a causal link between her protected activity and termination, Dkt. No. 42 at 19. Plaintiff further argues that Defendants' actions in extending the PIP, encouraging Liss to refrain from engaging with Plaintiff, and general increased hostility and

scrutiny constituted adverse actions.  Dkt. No. 45 at 5.[5]  Plaintiff argues that the temporal proximity between her complaints and the adverse actions suffices to plead causation.  *Id.*

As an initial matter, the AC raises some ambiguity as to the timing of Plaintiff's complaints.  Plaintiff states that she informed HR in a meeting following issuance of the PIP that "she had initiated an internal racial and employment discrimination complaint."  AC ¶ V.F.25. The AC does not allege when Plaintiff initiated the complaint of racial discrimination or whether she filed the complaint before issuance of the PIP.  Defendants filed a copy of an EEOC complaint along with their motion to dismiss as a document incorporated by reference in the AC. Dkt. No. 41-2.  The EEOC complaint is signed March 30, 2023, stamped received in May with an unclear date, and describes, as the basis of the complaint, events that occurred the day Plaintiff received the PIP.  *Id.*  Though the EEOC complaint itself contains internal contradictions as to timing, the allegations as a whole do not support an inference that Plaintiff filed the discrimination complaint prior to the issuance of the PIP.  As to her complaint of retaliation, Plaintiff also did not plead the date on which she reported the comments regarding her discrimination complaint and the PIP to the internal EEO Director.  Plaintiff alleges that she contacted the EEO director after her HR meeting, which was held in or around May or June 2023, but in the same sentence also references a July 7, 2023 teams meeting.  AC ¶ V.G.32.  She also alleges that she informed the EEO Director of Liss's comments regarding her complaint and the PIP, *id.* ¶ V.G.33, and that Liss made those comments in early June 2023, *id.* ¶ V.H.38. Reading the complaint as a whole, and drawing all inferences in Plaintiff's favor, it appears that Plaintiff's internal EEO complaint occurred in or after June 2023.

---

[5] Citations to this docket entry use ECF pagination.

The Court first addresses whether Plaintiff has adequately alleged a causal link between her protected activity and ultimate termination through temporal proximity.  "When assessing causal connections based on temporal relationship, '[t]hree months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation.'" *St. Louis v. N.Y.C. Health & Hosp. Corp.*, 682 F. Supp. 2d 216, 235 (E.D.N.Y. 2010) (quoting *Yarde v. Good Samaritan Hosp.,* 360 F.Supp.2d 552, 562 (S.D.N.Y.2005)); *see also Bamba*, 2024 WL 3924810, at *18 ("[R]ecent Second Circuit decisions have stated that temporal proximity alone is 'generally insufficient to establish causation after about three months." (quoting *Massaro v. N.Y.C. Dep't of Educ.*, 2022 WL 1788203, at *2 (2d Cir. June 2, 2022)); *but see Dodd v. City Univ. of N.Y.*, 489 F. Supp. 3d 219, 247 (S.D.N.Y. 2020) ("Generally, to show causation through temporal proximity alone, courts in this Circuit require no more than two months to have passed between a protected activity and an adverse action.") (citing *Feliciano v. City of New York*, 2015 WL 4393163, at *10 (S.D.N.Y. July 15, 2015) (citing cases)).  However, pleading less than a two-to-three-month gap "is not a bright-line rule" for temporal proximity. *Bamba*, 2024 WL 3924810, at *18.  "Ultimately, a court must 'exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases.'"  *Id.* (quoting *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)).  A longer gap may support an inference of causation where there is evidence that the "adverse action occurred at the first actual opportunity to retaliate," *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013), while a short gap may not support an inference where an intervening event "presents a more obvious cause" of the adverse action, *Bamba*, 2024 WL 3924810, at *19.  Additionally, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation

31

does not arise." *Slattery*, 248 F.3d at 95. Disciplinary action that precedes protected activity generally cannot support a claim for retaliation.[6] *See Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir. 2001) (plaintiff must allege "that the protected activity preceded the adverse action in order to satisfy the causation requirement"); *Glover v. Grimaldi*, 2025 WL 919930, at *13 (S.D.N.Y. Mar. 26, 2025) (dismissing retaliation claim where alleged adverse action occurred prior to protected activity).

Plaintiff's internal EEO complaint occurred approximately three months prior to her termination on September 19, 2023 and her EEOC discrimination complaint occurred at least four months prior to her termination. Plaintiff has not alleged that either her complaint of discrimination or her internal complaint of retaliation occurred prior to the issuance of the PIP.[7] She further alleges that beginning in January 2023, approximately four months prior to the PIP, Liss began downgrading her assignments and conducting weekly "check-ins." AC ¶¶ 8, 14; *see also* Dkt. No. 41-1 (PIP from May 2023 noting that Plaintiff was "counseled on [her] unacceptable performance at our regular check-ins and in writing throughout the past two

---

[6] The elements of the prima facie case seem to require that retaliation was caused by protected activity that actually occurred, not contemplated protected activity. *See Slattery*, 248 F.3d at 94 (noting that plaintiff must allege participation in a protected activity and that the activity had a causal connection to the adverse action). By contrast, some state laws contemplate that a defendant may be held liable for retaliation if they take action preemptively in response to anticipated protected activity. *See Steele v. Youthful Offender Parole Bd.*, 76 Cal. Rptr. 3d 632, 644 (Cal. Ct. App. 2008) (noting that California's Fair Employment and Housing Act "protects employees against preemptive retaliation by the employer"). There is no such allegation here.
[7] If Plaintiff's complaint of discrimination preceded the issuance of the PIP, that allegation could support an inference of causation. *See James v. Countrywide Fin. Corp.*, 2012 WL 6923758, at *6 (E.D.N.Y. Oct. 11, 2012), *report and recommendation adopted*, 2013 WL 249459 (E.D.N.Y. Jan. 23, 2013) (allegation that plaintiff was placed on a PIP one month following complaint of discrimination sufficient to state a claim of retaliation); *Choudhury v. Northwell Health, Inc.*, 2025 WL 2300220, at *14 (E.D.N.Y. Aug. 8, 2025) (placement on a PIP less than two months following complaint of discrimination sufficient to establish a causal connection for his retaliation claim).

months"). Plaintiff asserts that the allegations of poor performance are fabricated. AC

¶ V.E.18–20. However, even accepting that allegation as true, Defendants' disciplinary actions,

well-founded or not, long preceded either of Plaintiff's complaints. Her termination followed

"gradual adverse job actions [that] began well before the plaintiff had ever engaged in any

protected activity." *Slattery*, 248 F.3d at 95. Temporal proximity alone, therefore, cannot

support an inference of causation, even at the pleading stage. *See, e.g., Forrest v. N.Y.C. Hous.

Auth.*, 2023 WL 3203646, at *8 (S.D.N.Y. May 2, 2023) (plaintiff failed to "plausibly allege a

causal nexus" where complaint alleged an extensive period of progressive disciplinary actions,

beginning with downgrading of responsibilities eight months prior to protected activity); *Torre v.

Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 289 (S.D.N.Y. Oct. 8, 2020) (dismissing

retaliation claims where "alleged retaliatory conduct was gradual and started well before

Plaintiffs' complaints"); *Richards v. City of New York*, 2021 WL 4443599, at *9 (S.D.N.Y. Sept.

28, 2021) (dismissing retaliation claim where "negative performance evaluation and ultimate

termination were the culmination of events that began over a month before" protected activity);

*cf. Okafor v. N.Y.S. Ins. Fund*, 2025 WL 2299172, at *19 (S.D.N.Y. Aug. 8, 2025) (relying on

*Slattery* and denying motion to dismiss where adverse action constituted "a distinct event, rather

than a continuation of 'progressive discipline'").

In addition to temporal proximity, Plaintiff alleges that Defendants explicitly

acknowledged a relationship between her disciplinary process and the complaint. She alleges

that HR "made clear that removal from the PIP was contingent on the outcome of the internal

investigation," AC ¶ V.G.33, and that Liss told Plaintiff that her "PIP would be extended because

her internal EEO complaint needed to be resolved first or 'run simultaneously' with the PIP," *id.*

¶ V.H.38. She further alleges that "once the internal investigation concluded, she was not

33

removed from the PIP but instead terminated." *Id.* ¶ V.G.35.  In essence, Plaintiff's complaint could be read to assert that by explicitly waiting for resolution of the internal investigation prior to resolving her PIP, Defendants admitted that her termination resulted not from her performance but instead from the complaint.

Defendants' decision to wait for resolution of the complaint prior to taking further disciplinary action cannot, in and of itself, support an inference of causation.  To be sure, a company might seek to unlawfully fire an employee in retaliation for filing a complaint of discrimination and, to avoid any appearance of impropriety, patiently wait until the complaint is resolved before terminating the employee.  However, the waiting itself cannot provide a causal link between the complaint and the termination.  In other words, Defendants' decision to wait until the resolution of the complaint to proceed with disciplinary action neither inoculates them from a retaliation claim nor provides the requisite causal nexus.  Otherwise, any company that receives a complaint of discrimination after initiating a disciplinary action would be placed with a Hobson's choice: if the company waits for resolution of the complaint prior to proceeding with the disciplinary action, the intentional waiting creates an inference of retaliation.  Yet, if the company proceeds with disciplinary action while a complaint is pending as to that action, they risk being accused of taking a disciplinary action spurred by discrimination.  In sum, a plaintiff must allege some facts beyond mere waiting before advancing disciplinary action to plausibly allege that her filing of the complaint was a but-for cause of her termination.

Here, Plaintiff has made such allegations.  Plaintiff alleges that after she filed her EEOC and internal complaints, Liss began interviewing candidates for her position, Dkt. No. 41-3, and that she was denied the supervisory support and coaching contemplated in her PIP, despite being expected to improve her performance, AC ¶¶ V.H.41, V.I.47, both of which suggest that her

34

termination became a foregone conclusion and Defendants were indifferent to Plaintiff's performance.  Plaintiff also alleges that the denial of supervisory support was related to her filing of the complaint: HR specifically instructed Liss to "'refrain from' engaging with Plaintiff during the PIP period." *Id.* ¶ V.H.41.  Plaintiff further alleges that Defendants did not provide replacement supervision, in effect, setting her up for failure.  *Id.* ¶ V.I.47.  Putting the allegations together and drawing all reasonable inferences in Plaintiff's favor, the AC can be read to allege that Defendant's attitude and behavior towards Plaintiff changed as a result of her complaint.  Whereas before her complaint was filed, Defendants were committed to rehabilitating Plaintiff and trying to continue her employment, after her complaint, Defendants ceased to be interested in supporting Plaintiff.  Rather than helping her resolve the performance concerns identified by the PIP, Defendants in effect decided her employment would need to be terminated at the next opportune moment—after the investigation was concluded.  Construing the complaint to make such allegations, it states a claim for relief.  Although an employee may not inoculate herself from  discipline by the mere opportunistic exercise of protected conduct after the writing is already on the wall, *see Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 519 (S.D.N.Y. 2010), so too an employer cannot protect itself against a claim of retaliation by deferring the announcement of a decision already made to take adverse action until after the time when such announcement would be immediately suspect.  *See, e.g., Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (plausible that defendant officers "waited to exact their retaliation at an opportune time" where evidence supported the inference that officers knew of protected activity occurring six months prior and plaintiff's fight with another inmate provided "ready explanation for any injuries suffered" from retaliatory beating); *Clark v. Boughton*, 2022 WL 4778582, at *11 (D.

35

Conn. Oct. 3, 2022) (though a "close call," plausible that defendants terminated plaintiff at "the earliest available time" where she was terminated at the conclusion of an investigation).

Plaintiff has stated a claim for retaliation under Title VII and Section 1981 in regard to her termination. Because her federal claims of retaliation survive, Plaintiff's NYSHRL and NYCHRL claims, which are judged under a more lenient standard, also survive. *See, e.g., Jane v. Bhansali*, 2026 WL 636672, at *9 (E.D.N.Y. Mar. 6, 2026); *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 334 (S.D.N.Y. 2020). Defendants' motion to dismiss Plaintiff's claims of retaliation under federal and state law is therefore denied.

## VII.    Plaintiff's State Law Tort Claims

Plaintiff brings state claims of defamation per se, libel, and tortious interference with prospective employment. Defendants argue that Plaintiff's claims fail because she failed to allege that she filed a notice of claim, as required by New York law. Dkt. No. 42 at 21.

"Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality." *Diarra v. City of New York*, 771 F. App'x 69, 71 (2d Cir. 2019) (summary order) (quotations omitted). "Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Id.* (quoting *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999)); *see, e.g., Medina v. City of New York*, 2020 WL 7028688, at *13 (S.D.N.Y. Nov. 30, 2020); *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 377–78 (S.D.N.Y. 2015). "The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 448 (E.D.N.Y. 2012); *accord Palmer v. City of New York*, 564 F. Supp. 3d 221, 241 (E.D.N.Y. 2021).

36

Plaintiff has not alleged that she filed a notice of claim, in either her Amended Complaint or her declaration filed in response to Defendants' motion to dismiss. Plaintiff's claims of defamation, libel, and tortious interference with prospective employment are therefore dismissed.

## CONCLUSION

Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's claims against Talent and SBS are dismissed with prejudice. Plaintiff's claims of discrimination and hostile work environment under federal and state law are dismissed without prejudice. Defendant's motion to dismiss Plaintiff's claims of retaliation under federal and state law is denied. Plaintiff's tort claims under state law are dismissed with prejudice for failure to file a notice of claim.

Plaintiff is granted leave to file a second amended complaint limited to maintaining her claims of retaliation and repleading her claims of discrimination and hostile work environment (Counts I and III) of the first amended complaint consistent with this Opinion and Order and shall file any second amended complaint within sixty days of the date of this Opinion and Order.

The Clerk of Court is respectfully directed to close Dkt. Nos. 24 and 40.

SO ORDERED.

Dated: June 25, 2026
        New York, New York

_____
LEWIS J. LIMAN
United States District Judge

37